[Cite as *State v. Jones*, 2013-Ohio-815.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98175**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAMONT JONES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543407

**BEFORE:** Rocco, J., Stewart, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 7, 2013

[Cite as *State v. Jones*, 2013-Ohio-815.]

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
Law Office - Timothy Farrell Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Edward D. Brydle
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Lamont Jones appeals his convictions after a jury found him guilty of one count of assault of a police officer in violation of R.C. 2903.13(A) and one count of resisting arrest in violation of R.C. 2921.33(A). He presents five assignments of error. In his first and second assignments of error, Jones argues that the trial court erred in refusing to give certain jury instructions. In his third assignment of error, Jones argues that the trial court abused its discretion in denying his request for discovery of police officers' personnel files and in precluding him from cross-examining the state's police officer witnesses regarding prior lawsuits or disciplinary action against the officers involving the use of excessive force. Finally, he argues that his convictions for assault and resisting arrest were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶2} Having reviewed the record, this court finds no merit to Jones's arguments. Consequently, his assignments of error are overruled, and his convictions are affirmed.

{¶3} The incident that led to Jones's convictions occurred on October 14, 2010, Jones's twenty-first birthday. That evening Jones was at home, preparing for a birthday party his friend, Tom, had planned for later that evening. The party was to occur at Tom's house, approximately 15-20 houses down the street from Jones's house on Force Avenue in Cleveland. Sometime that evening Jones's brother-in-law, Demonte White, and two friends, Leo Polite and Steven Hurt, who had come over to Jones's house in anticipation of the party, decided to walk over to Tom's house to help set up. Other

friends and family, including Jones and his mother, remained at Jones's house. Although Force Avenue had sidewalks, the three men chose to walk in the street as they made their way towards Tom's house.

{¶4} That same evening, the Cleveland police fourth district vice unit was conducting a patrol of the fourth district in three unmarked police cars, containing seven police officers. The unit was traveling westbound on Force Avenue at approximately 9:30 p.m. when they came upon the three men walking in the middle of the street. It was dark; the street was narrow; and the vehicles were unable to maneuver around the men. The men did not move as the vehicles approached, so Detective Rasberry, who was driving the lead vehicle, turned on his siren. The men turned around. As the police vehicles approached, one of the men appeared as if he was going to run. The officers quickly exited their vehicles and, for officer safety, handcuffed the three men and conducted a quick pat-down search for weapons. The three men fully cooperated with police.

{¶5} Shortly after White, Polite, and Hurt left Jones's house, another of Jones's friends, Sean Gipson, drove down the street on his way to the party. When he saw the three men had been stopped by police, he turned around and drove back to Jones's house. He told Jones and others what had happened. Jones immediately left the house and ran down the street to see what was going on.

{¶6} Jones's friends and family and the state's witnesses offered two very different accounts of what happened next. The state's witnesses, including Detectives Rasberry

and McKay and Sergeant Ross, testified that as Jones approached, he began yelling profanities. The officers testified that they told Jones several times to stop and to back away from the investigation. Jones, however, ignored the officers' warnings and continued his approach, yelling, screaming, and cursing at the officers. Sergeant Ross and Officer McKay stood side by side, attempting to block access to the area where Jones's friends were being searched. When Jones attempted to get around the officers to reach his friends, Sergeant Ross put out his hand, indicating to Jones to stay back. Jones jumped back and said "[g]et your f***ing hands off me." Concluding that Jones was not going to discontinue his efforts to intervene in the investigation, Detective McKay pulled out his handcuffs and told Jones he was under arrest for obstructing official business. Jones stepped back, put up his hands in a fighting stance and punched Sergeant Ross in the face. Sergeant Ross punched back, striking Jones in the left eye, and Jones fell to the ground. Detective McKay tackled Jones and attempted to handcuff him. Jones resisted, flailing his arms and tussling with the officers. Unable to secure Jones's hands behind his back, the officers warned Jones they would use a taser if he did not cooperate. Jones continued to resist the officers' attempts to handcuff him, and Detective McKay used his taser.

{¶7} Jones disputes the officers' version of events. He and his friends and family offered a different version of what occurred after Jones arrived on the scene. Jones testified that he calmly approached the officers and asked what was happening to his friends. He testified that when the police officers told him to get back, he backed away

as instructed, with his hands raised. Jones claims that as he was backing away, two or more officers charged him and tackled him to the ground. Jones further claims that as he was lying on his stomach on the pavement, one officer, whom he could not identify, punched him 15-20 times in the face. Jones claims that after he was handcuffed, the officers tasered him. Jones sustained various injuries, including an injury to his left orbital and a closed head injury, as a result of the incident.

{¶8} As Sergeant Ross and Detective McKay were attempting to handcuff Jones, another vehicle arrived on the scene containing Jones's mother, Kathy Curlee-Jones, and several other friends or family members. As she came out of the vehicle, Curlee-Jones began yelling at the officers. Officers told Curlee-Jones and the others to stop, to stay back, and to get back into the car. After several requests, Curlee-Jones and the others returned to her vehicle and started to leave the scene.

{¶9} In the meantime, the officers discovered that one of the men who had arrived with Curlee-Jones, Dicarlo Johnson, had a cell phone and appeared to be recording the incident. Believing the cell phone contained a video recording of the incident, the officers attempted to confiscate the cell phone as evidence. Detective Barnes testified that he went over to the vehicle, opened the front passenger side door and asked Johnson to give him the phone, explaining that it was evidence. Johnson refused; he handed the phone to Curlee-Jones, who put the phone down her shirt. Detective Barnes leaned into the vehicle and again asked for the cell phone. Curlee-Jones refused to give him the phone and "hit the gas." There is some dispute as to whether Detective Barnes was

hanging out of the vehicle and was being dragged by the vehicle or whether he was outside the vehicle as it began to move.

{¶10} Officers banged on the vehicle's windows and pointed their weapons at the vehicle, threatening to shoot unless Curlee-Jones stopped the vehicle. Curlee-Jones stopped the vehicle. Detectives McKay and Barnes pulled Curlee-Jones out of the vehicle and attempted to handcuff her. Officers testified that Curlee-Jones struggled with Detectives McKay and Barnes, kicking and swinging, refusing to be handcuffed, until Detective Rasberry tasered her. Curlee-Jones denied that she failed to cooperate with the arresting officers.

{¶11} The cell phone was recovered, taken to the police station, and logged in as evidence. It was later determined that the cell phone did not have video recording capabilities and did not contain any video of the incident.

{¶12} Jones was indicted on November 29, 2010. Jones was charged with one count of assault against Sergeant Ross in violation of R.C. 2903.13(A) and one count of resisting arrest in violation of R.C. 2921.33(A).

{¶13} The case proceeded to a jury trial on January 3, 2012. After considering all the evidence, the jury found Jones guilty on both the assault and resisting arrest charges. Jones was sentenced to one year of community control sanctions, including 180 days in a work release program, 20 hours of community service, a fine of $1,000, and an anger management program, on both counts of the indictment, to be served concurrently. After

the trial court imposed its sentence, Jones filed his notice of appeal, seeking to have his convictions vacated or reversed.

{¶14} Jones presents five assignments of error for review:

ASSIGNMENT OF ERROR 1

Lamont Jones was denied due process and a fair trial when the trial court failed to give jury instructions requested and proffered by the defense that a private citizen enjoys a legal right under the constitution to videotape the public activities of police officers and that a private citizen has the right to refuse a police request that is itself violative of the constitution.

ASSIGNMENT OF ERROR 2

Lamont Jones was denied due process and a fair trial and the trial court committed plain error, when the trial court failed to affirmatively instruct the jury that the fourth district vice police officers on October 14, 2010: (a) violated the legal rights of the three men they detained, searched, and handcuffed for walking in the street, and (b) exceeded their legal authority in making and/or attempting a warrantless seizure of the cell phone from Kathy Curlee-Jones and/or Decarlo [sic] Johnson.

ASSIGNMENT OF ERROR 3

Lamont Jones was denied due process and a fair trial when the trial court denied the defense request for discovery from the personnel files of the subject police officers and prohibited the defense from questioning the officers at trial about prior lawsuits against them for use of excessive force.

ASSIGNMENT OF ERROR 4

Lamont Jones' convictions for assault and resisting arrest are against the manifest weight of the evidence.   The jury clearly lost its way.

ASSIGNMENT OF ERROR 5

Lamont Jones' convictions for assault and resisting arrest are based upon evidence that is insufficient as a matter of law, in violation of Jones'

rights to due process and a fair trial as guaranteed by Article I, Sections 10 and 16 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.

## Jury Instructions

**{¶15}** Jones's first and second assignments of error involve the trial court's failure to provide certain jury instructions. Jones first argues that the trial court erred in refusing to give the jury the following instruction he proffered at trial:

> With respect to the cell phone at issue in this case, you are instructed that it is not lawful to arrest a person for making, maintaining or preserving a videotape of the police when the police are acting in public. A private citizen enjoys an absolute right under the First Amendment to the United States Constitution to record the public activities of the police. One cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution.

**{¶16}** When instructing the jury, a trial court is required to provide "a plain, distinct, and unambiguous statement of the law applicable to the evidence." *State v. Driggins*, 8th Dist. No. 98073, 2012-Ohio-5287, ¶ 73, citing *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985). "A jury instruction is proper where '(1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury.'" *State v. Walker*, 8th Dist. No. 97648, 2012-Ohio-4274, ¶ 53, quoting *State v. Kovacic*, 11th Dist. No. 2010-L-065, 2012-Ohio-219, 969 N.E.2d 322, ¶ 15; *see also State v. Theuring*, 46 Ohio App.3d 152, 154, 546 N.E.2d 436 (1st Dist.1988) ("A defendant is entitled to have his instructions included in the charge to the jury only when they are a correct statement of the law, pertinent and not included in substance in the

general charge."). We review a trial court's refusal to give a requested jury instruction for abuse of discretion. *State v. Owens*, 8th Dist. No. 98165, 2012-Ohio-5887, ¶ 11, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

{¶17} Jones contends that the trial court was required to give the jury his requested instruction because it was an "accurate statement of the law" and because "[t]he jury needed this information in order to properly assess the activities of the law enforcement officers and to weigh their credibility * * * with respect to all aspects of their multiple confrontations with citizens that night including with Lamont Jones."

{¶18} While courts must give requested special instructions that are pertinent to an issue and correctly state the law, they have no corresponding obligation to give irrelevant instructions. *See, e.g., Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988), paragraph two of the syllabus ("It is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case."); *State v. Frazier,* 9th Dist. No. 25338, 2011-Ohio-3189, ¶ 16-24 (trial court properly refused to give proposed jury instruction that "was not relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder"); *State v. Monteith,* 4th Dist. Nos. 03CA2871, 03CA2876, 2003-Ohio-4392, ¶ 15 (trial court did not abuse its discretion in refusing to give requested jury instructions that did not correctly state the law and did not apply to the facts of the case); *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981) ("[A] court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings.

Abstract rules of law or general propositions, even though correct, ought not to be given unless specifically applicable to facts in issue.") (Citations omitted.) We find no error in the trial court's refusal to give Jones's requested instruction.

{¶19} Jones's proposed jury instruction relates to the cell phone and the right of the public to videotape police activity. As such, it was immaterial to the charges against Jones. Neither of the offenses with which Jones was charged related to the cell phone, any video recording, or any "police request" that was allegedly "violative of the Constitution." Jones was charged with assault for punching Sergeant Ross and for his actions in resisting arrest after punching Sergeant Ross. No one was arrested for "making, maintaining, or preserving a videotape" of any police activity as set forth in Jones's proposed jury instruction. Further, the officers' discovery of a possible video recording and officers' efforts to recover, as evidence, the cell phone on which the video was purportedly recorded occurred *after* the events that gave rise to the offenses with which Jones was charged. Because Jones's requested jury instruction was not relevant to the offenses with which Jones was charged, the trial court did not abuse its discretion in refusing to give the instruction proffered by Jones.

{¶20} Jones also contends that the trial court should have sua sponte instructed the jury that "the fourth district vice officers, on the night in question, violated the legal rights of the three men — White, Polite, and Hurt — when they detained, searched, and handcuffed the men for allegedly walking in the street" and "exceeded their legal authority in attempting and/or making a warrantless seizure of the cell phone from Kathy

Curlee-Jones and/or Decarlo [sic] Johnson."

**{¶21}** Jones argues that these instructions were "essential for the jury to make a proper evaluation of the evidence" and "to determine the credibility" of the police officers "as to their police activities that night." Jones further contends that if these instructions had been given, the jury would have "realized" that the officers had "repeatedly violated the legal rights of the very persons they are sworn to protect" and could have "evaluated" the officers' "denials of [Jones's] claims that he too had been victimized by these same officers" with "complete information." As Jones never requested these instructions below, we review this claim solely for plain error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶22}** Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison,* 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.* We find no plain error in the trial court's failure to give jury instructions regarding these issues.

**{¶23}** Jury instructions are a statement of the law applicable to the particular facts of the case. The additional instructions Jones claims the trial court should have given —

that officers "violated the legal rights" of White, Polite, and Hurt and "exceeded their legal authority" in "seiz[ing]" the cell phone — were not statements of applicable law, but rather, specific factual findings and conclusions, which were never established in this case. White, Polite, and Hurt were not on trial in this case. There was no finding in this case that any officer "violated any legal right" of any of the three men. Nor was there any finding that officers "exceeded their legal authority" in recovering the cell phone.

{¶24} Further, whether the officers "violated the legal rights" of White, Polite, and Hurt — which allegedly occurred before Jones was at the scene — or "exceeded their legal authority" in attempting to recover the cell phone — which allegedly occurred after Jones's arrest — had no impact on the charges against Jones, i.e., whether Jones assaulted Sergeant Ross and thereafter resisted arrest.

{¶25} Because the jury instructions Jones claims the trial court should have given involve issues that were irrelevant to the charges against him and set forth factual findings and conclusions that were never established, the trial court did not err in failing to give special instructions addressing these issues to the jury.

{¶26} Accordingly, the trial court committed no error — much less plain error — in failing to give the jury instructions Jones claims should have been given in this case. Jones's first and second assignments of error are overruled.

### Prior Lawsuits Involving Allegations of Excessive Force

{¶27} Jones's third assignment of error relates to the discoverability and admissibility of evidence of prior lawsuits or disciplinary action involving the officers

who were at the scene of the incident. Jones argues that the trial court improperly denied his request for discovery of materials in the officers' personnel files relating to prior lawsuits or disciplinary action involving the use of excessive force. Jones also contends that the trial court erred in precluding defense counsel from cross-examining the officers regarding any such prior lawsuits or disciplinary action involving the use of excessive force.

{¶28} A trial court has broad discretion over matters pertaining to discovery. *See, e.g., State v. Harris*, 8th Dist. No. 44029, 1982 Ohio App. LEXIS 15403, *15 (Mar. 11, 1982), citing *State v. Lasky,* 21 Ohio St.2d 187, 192, 257 N.E.2d 65 (1970). Likewise, the decision whether to admit or exclude evidence falls within the sound discretion of the trial court. *State v. Robb*, 88 Ohio St.3d 59, 69, 723 N.E.2d 1019 (2000). Accordingly, for an appellate court to disturb a ruling of the trial court relating to discovery or the admissibility of evidence, the record must reflect an abuse of discretion, i.e., that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Primeau*, 8th Dist. No. 97901, 2012-Ohio-5172, ¶ 42; *State v. Hamilton*, 8th Dist. No. 86520, 2006-Ohio-1949, ¶ 19. The trial court did not abuse its discretion in disallowing the requested discovery or in precluding Jones from questioning the officers regarding any prior lawsuits or disciplinary action involving the officers.

{¶29} On January 24, 2011, Jones filed a "motion for additional discovery," seeking additional discovery materials from the state, including "copies of the complete personnel files" for the seven officers who had been at the scene of the incident. The

state objected on the grounds that the prosecutor's office did not have the officers' personnel files, i.e., the state contended that such records would need to be subpoenaed from the Cleveland police department, and that such records were not otherwise discoverable. Jones filed a reply, narrowing the scope of the materials he requested to "any information contained in the personnel files concerning complaints, lawsuits, investigations, reprimands, disciplinary actions, and other information regarding the alleged use of unnecessary or excessive force by the officers involved in this case." The trial court denied the requested discovery, concluding that the probative value of whatever information might be contained in the personnel files would be "far outweighed by * * * undue prejudice" and, therefore, would be inadmissible under Evid.R. 403.

{¶30} The state then moved in limine to preclude Jones from making any mention of lawsuits involving the officers at trial. The trial court granted the state's motion in part and denied it in part. The trial court ruled that Jones could not question the officers regarding any specific lawsuits that may have been filed against them or any specific disciplinary action that may have been taken against them; however, Jones could question the officers generally regarding their knowledge that a civil rights lawsuit could be filed against them if they used excessive force or engaged in other misconduct.

{¶31} Jones claims that evidence of prior lawsuits involving the officers' alleged use of excessive force was material to his theory of the case, i.e., that officers used unnecessary force against Jones, injured him, and then "fabricated the circumstances of the encounter," painting Jones as the aggressor, in order to avoid a federal civil rights

lawsuit for excessive force. Jones claims that he did not seek to use this evidence to show the officers had a propensity to use excessive force — a purpose he acknowledges is prohibited under Evid.R. 404(B) — but rather to show that such conduct can and has led to civil rights lawsuits, "a personal and professional hassle the officers might seek to avoid by fabricating the circumstances of [Jones's] injuries." Jones contends that evidence that the officers had been previously sued for use of excessive force was, therefore, "material to the preparation of [his] defense" and discoverable under Crim.R. 16(B)(3), and was admissible as "proof of [the officers'] motive" to lie under Evid.R. 404(B).

{¶32} This court has previously held that the personnel files of law enforcement officials should be protected against "fishing expeditions" and has denied requests for discovery of personnel files where a defendant has failed to articulate a specific reason for seeking information contained in officers' personnel files or has failed to demonstrate that information sought from such files would be admissible at trial. *See, e.g., Harris*, 1982 Ohio App. LEXIS 15403 at *8-15 (party seeking discovery from a police officer's personnel file bears the burden of establishing a specific need for evidence from officer's personnel file and the materiality and admissibility thereof); *State v. Bonnell,* 8th Dist. No. 55927, 1989 Ohio App. LEXIS 4982, *16-17 (Oct. 5, 1989) (trial court did not abuse discretion in denying motion for discovery of officer's personnel files based on "a generalized statement that the files might contain helpful information"); *see also Columbus v. Robinson*, 33 Ohio App.3d 151, 514 N.E.2d 919 (10th Dist.1986).

{¶33} Jones argues that this case is different. He contends that because he presented evidence to the trial court showing that several of the officers involved in the incident had been sued in other lawsuits involving allegations of excessive force, he presented a "reasonable factual basis" for the discovery of the officers' personnel files. Jones's "evidence" consists of electronic docket sheets from two cases filed in the United States District Court for the Northern District of Ohio, which indicate that the cases were settled and dismissed. He also contends that this case is distinguishable from other cases in which discovery of police personnel records was denied because none of those cases involved the use of prior lawsuits to establish an officer's "motive to lie" under Evid.R. 404(B). As such, Jones contends, the trial court erred in denying his request for discovery of the officers' personnel files and in prohibiting him from cross-examining the state's police officer witnesses regarding any prior lawsuits or disciplinary action in which they had been involved concerning use of excessive force. We disagree.

{¶34} Evid.R. 404(B) sets forth various exceptions to the general rule that evidence of a person's other bad acts are inadmissible. Under Evid. R. 404(B):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule "affords broad discretion to the trial judge regarding the admission of other acts evidence." *State v. Williams*, Slip Opinion No. 2012-Ohio-5695, ¶ 17.

{¶35} In addition, Evid.R. 403(A) grants a trial court authority to limit questioning

or to otherwise exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A) states:

Exclusion mandatory.

Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶36} In *Williams*, the Ohio Supreme Court set forth a three-part test for determining the admissibility of other acts evidence:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403. *Williams*, Slip Opinion No. 2012-Ohio-5695 at ¶ 20.

{¶37} As discussed above, Jones's stated purpose in seeking to introduce evidence of prior lawsuits or disciplinary action involving the officers' alleged use of excessive force was to show a "motive to lie," i.e., that based on their knowledge and experience with civil rights lawsuits and in order to avoid a civil rights lawsuit for excessive force in this case, the officers had "fabricated the circumstances" of their encounter with Jones. With respect to the first step, evidence that the officers had been previously involved in lawsuits or disciplinary action involving the use of excessive force could make a "fact that is of consequence to the determination of the action more or less probable than it would be without the evidence," i.e., whether the officers used unnecessary force against

Jones, injured him, and then lied about it — as Jones claimed — or whether Jones was the aggressor — as the officers claimed.    With respect to the second step, "motive" is one of the "legitimate purpose[s]" stated in Evid.R. 404(B) for which other acts evidence may admissible.    However, with respect to the third step, we cannot say that the trial court abused its discretion in determining that the dangers of unfair prejudice substantially outweighed the probative value associated with evidence of prior lawsuits or disciplinary action involving the officers' alleged use of excessive force.  This is particularly so in light of the stated purpose for which Jones sought to introduce the evidence and the alternative means the trial court offered to Jones to achieve that purpose.

{¶38} The trial court could have reasonably concluded that admission of evidence of prior lawsuits and disciplinary action involving the use of excessive force could confuse the jury or mislead the jury to believe that because the officers had been sued for, or were otherwise alleged to have used, excessive force in the past, it was more likely that the officers used excessive force in this case, i.e., that the officers had a propensity to use excessive force and acted in conformity therewith.  Thus, the trial court could have determined that exclusion of this evidence was necessary to avoid unfair prejudice and a potential circumvention of Evid.R. 404(B)'s prohibition on the use of other acts evidence to establish propensity.  To the extent Jones sought to use evidence of prior lawsuits to establish the officers' motive to lie, the trial court reasonably determined that Jones's purpose could be achieved — without the risk of unfair prejudice — by cross-examining the officers generally regarding their knowledge that a civil rights lawsuit could be filed

against them if they used excessive force, without inquiring into the specifics of any prior lawsuits that may have been filed against them, or disciplinary action taken against them.

{¶39} For the above reasons, we find that the trial court did not abuse its discretion in denying Jones's motion for discovery of the officers' personnel files or in precluding defense counsel from cross-examining the officers at trial regarding any prior lawsuits or disciplinary action involving the use of excessive force. Jones's third assignment of error is overruled.

## Sufficiency and Manifest Weight of the Evidence

{¶40} In his fourth and fifth assignments of error, Jones challenges both the sufficiency and weight of the evidence presented at trial to support his convictions for assault and resisting arrest. Because they present interrelated issues, Jones's fourth and fifth assignments of error will be addressed together. {¶41} When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. If the evidence is sufficient to support the conviction as a matter of law, the appellate court then considers the claim that the judgment was against the manifest weight of the evidence. This test is much broader.

**{¶42}** When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the reviewing court sits as a "'thirteenth juror'" and may disagree "with the factfinder's resolution of conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In its review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the jury to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus.

**{¶43}** The power to reverse a conviction as against the manifest weight of the evidence must be exercised with caution; a new trial is granted only in the exceptional case in which the evidence weighs heavily against the conviction. *Martin, supra.* This is not that case.

**{¶44}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational jury could have found that the essential elements of the crimes of which Jones was convicted were proven beyond a reasonable doubt. We likewise find

no merit to Jones's assertion that the jury's verdict was against the manifest weight of the evidence.

**{¶45}** Jones was convicted of one count of assault against Sergeant Ross in violation of R.C. 2903.13(A) and one count of resisting arrest in violation of R.C. 2921.33(A). Pursuant to R.C. 2903.13(A), "No person shall knowingly cause or attempt to cause physical harm to another * * *." Pursuant to R.C. 2921.33(A), "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

**{¶46}** Jones argues that his convictions should be overturned because there was insufficient credible evidence that he was the aggressor. He contends that the jury's verdict "reflects an unreasonable view of the evidence" because the jury gave "undue, and totally undeserved weight" to testimony by the state's police officer witnesses and failed to credit the testimony given by the "non-police officer" witnesses, i.e., Jones and his friends and family, which he claims was more credible. Although Jones makes a number of sweeping generalizations regarding "the police testimony" in this case, describing it as "riddled with contradictions, errors, and inconsistencies," "not credible," "obviously inaccurate," and "false," he points to nothing in the record that would lead us to conclude that the jury clearly lost its way and created such a miscarriage of justice that Jones's convictions must be reversed. Indeed, Jones fails to offer any reason for discrediting the officers' testimony other than his own unfounded conclusions that the officers had violated the civil rights of others when they detained and searched the three men who had

been blocking the road or when they drew their weapons after Curlee-Jones refused to comply with officers' requests to stop her vehicle. According to Jones, because the officers disregarded the civil rights of others, the jury could not have reasonably believed their testimony that Jones punched Sergeant Ross and thereafter resisted arrest. Jones's unsupported accusations do not warrant overturning his convictions.

{¶47} In this case, the state presented consistent testimony from four eye witnesses supporting the jury's finding that Jones knowingly attempted to cause physical harm to Sergeant Ross while in the performance of his official duties and that Jones recklessly or by force resisted his arrest. Sergeant Ross and Detectives McKay, Rasberry, and Barnes each testified regarding a very similar set of events. Rasberry, McKay, and Ross testified that Jones was yelling and screaming profanities as he approached the scene, that he ignored repeated warnings to stop and get back and that he, instead, continued to approach. All four officers also identified Jones as the initial aggressor. Detectives Barnes and Rasberry testified that as Sergeant Ross put out his hand and attempted to block Jones from advancing, Jones put up his arms in a fighting pose or "boxing stance" and punched Sergeant Ross in the face. Sergeant Ross similarly testified that when Jones, despite the officers' repeated warnings to back away from the investigation, again attempted to get around the officers to reach his friends, he put his hand on Jones's chest and pushed Jones back. Sergeant Ross testified that Jones responded with further profanity and "started throwing haymakers" at Sergeant Ross, striking Sergeant Ross in the face. Detective McKay testified that when Jones ignored

the officers' commands to get back, he and Sergeant Ross attempted to block Jones from entering the area where his friends were being searched. Jones then tried to push himself through the officers. When Detective McKay realized Jones was not going to discontinue his efforts to intervene in the investigation, he told Jones he was under arrest for obstructing official business. McKay testified that as he pulled out his handcuffs and reached out for Jones, Jones put up his hands, fists closed, and began swinging, striking Sergeant Ross.

{¶48} Detectives Rasberry and McKay and Sergeant Ross also testified in detail regarding Jones's efforts to resist arrest after he punched Sergeant Ross. The officers testified that Jones ignored repeated requests to cooperate and that Jones was "wrestling" and "tussling" with the officers, "struggling," "kicking," "swinging," and "flailing" his arms as the officers attempted to secure Jones's hands behind his back. Sergeant Ross and Detective McKay further testified that after they rolled Jones on his stomach, he refused to remove his right hand from underneath him, ultimately requiring the use of a taser in order to handcuff him.

{¶49} As detailed above, the state's case contained substantial evidence upon which the jury could reasonably conclude, beyond a reasonable doubt, that each element of the charged offenses had been established. The jury weighed credibility and it, as the factfinder, was free to believe all, part, or none of the testimony of each witness. It was well within the province of the jury to credit the version of events offered by the state's witnesses and to reject the version of events offered by Jones and his friends and family,

i.e., that Jones calmly approached the scene, promptly complied with the officers' requests to retreat, and was inexplicably attacked multiple times by one or more officers whom he could not identify. After examining the entire record, weighing the evidence, and considering the credibility of the witnesses, we do not find that the jury lost its way or created a manifest miscarriage of justice in convicting Jones of the assault on Sergeant Ross and resisting arrest.

{¶50} Accordingly, we overrule Jones's fourth and fifth assignments of error and affirm his convictions.

{¶51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, A.J., and
EILEEN A. GALLAGHER, J., CONCUR