THE STATE OF OHIO, APPELLEE, *v*. HARRISON, APPELLANT.

[Cite as *State v. Harrison,* 122 Ohio St.3d 512, 2009-Ohio-3547.]

*Criminal law — Trial court has no authority to resentence defendant to correct a sentencing error once defendant has served term previously imposed — Failure of trial court to impose mandatory postrelease control — Court lacks jurisdiction to correct error and impose mandatory postrelease control on defendant who has completed prison term.*

(No. 2008-0331 — Submitted November 19, 2008 — Decided July 28, 2009.)

APPEAL from the Court of Appeals for Madison County,

No. CA2006-08-028, 2007-Ohio-7078.

_____

PFEIFER, J.

{¶ 1} On May 2, 2002, dispatcher Denise Kohler of the Wapakoneta Police Department discovered a running tape recorder placed behind a trash can in the restroom of the police department's ladies' locker room. The tape recorder belonged to appellant David Harrison, who was then Wapakoneta's chief of police. Later on that same day, Harrison submitted a letter of retirement to the Wapakoneta safety services director.

{¶ 2} Within one week, the safety services director requested that the Ohio Bureau of Criminal Identification and Investigation ("BCI") initiate an investigation into Harrison's activities. During the investigation, law enforcement seized a floppy disk located in Harrison's office; the disk contained child pornography. The investigation also revealed pornographic images on Harrison's city-owned computer and transfer logs that showed file transfers between Harrison's office computer and his laptop computer. On June 17, 2002, investigators executed a search warrant on Harrison's house, seizing electronic storage media containing images of suspected child pornography. The

investigation also revealed Internet searches for websites containing sexual content involving children.

{¶ 3} On June 17, 2003, Harrison, his counsel, and Special Prosecutor Lawrence S. Huffman signed a negotiated plea agreement. In the agreement, the state agreed not to object to a presentence investigation or to the setting of bond and agreed to make no recommendation on sentencing. Harrison waived his right to be prosecuted by indictment and consented to be prosecuted through a bill of information. He agreed to plead guilty to the six counts in the bill of information. Count One alleged obstruction of official business, in violation of R.C. 2921.31(A), a misdemeanor of the second degree; Counts Two, Three, and Four alleged unauthorized use of a computer, computer system, or computer network, in violation of R.C. 2913.04(B), a felony of the fifth degree; Count Five alleged pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5), a felony of the fourth degree; and Count Six alleged pandering obscenity, in violation of R.C. 2907.32(A)(5), a felony of the fifth degree. Only Counts One and Two in the bill of information alleged a specific date on which the offense occurred. As for the other counts, the prosecutor told the judge at the plea hearing, "[T]here was no use I felt, to make a separate count for each photograph or separate count for each date." The bill of information alleged instead that all the charged crimes took place during a certain range of dates.

{¶ 4} On the same day that Harrison and the special prosecutor signed the negotiated plea agreement, the bill of information was filed with the court, Harrison pleaded guilty at the hearing, and the trial court found Harrison guilty of all counts. On July 31, 2003, Harrison was sentenced to one year in prison. The court incorrectly informed Harrison in its journal entry that he was additionally subject to an *optional* three-year period of postrelease control. The court's journal entry reads:

**{¶ 5}** "The Court has further notified the Defendant that Post Release Control is OPTIONAL in this case for THREE (3) years, as well as the consequences for violating conditions of Post Release Control imposed by the Parole Board under Ohio Revised Code §2967.28. The Defendant is ORDERED to serve as part of this sentence any term of Post Release Control imposed by the Parole Board, and any prison term for violation of that Post Release Control." (Capitalization sic.)

**{¶ 6}** The parties agree that the trial court's entry was incorrect. They further agree that pursuant to R.C. 2967.28(B), which requires a felony sex offender's sentence to include five years of postrelease control, the court should have imposed a mandatory five years of postrelease control on Harrison. Neither the special prosecutor nor defense counsel, however, sought to correct the journal entry at the time of sentencing.

**{¶ 7}** Harrison filed a motion for early judicial release pursuant to R.C. 2929.20 on September 4, 2003. In a November 12, 2003 entry, the court denied Harrison's motion for judicial release but did modify Harrison's sentence to allow him to complete his incarceration in a county jail instead of at the state facility in Orient. The Adult Parole Authority did not impose any postrelease control upon Harrison's release from the county jail. The state has argued that "due to the defendant serving the balance of his term in the Auglaize County Correctional Center instead of the Ohio Department of Rehabilitation and Corrections, officials of the Ohio Department of Rehabilitation and Corrections, including the Parole Board, had no ability to place the defendant on post release control for either the optional term as ordered by the Court or for the mandatory five year term as is mandated by statute."

**{¶ 8}** Harrison was released from the county jail in July 2004, having served his entire sentence. Over six months later, on February 18, 2005, the Auglaize County Prosecutor moved to resentence Harrison to impose the

mandatory five-year postrelease control. On March 23, 2005, the court essentially granted the state's motion to resentence Harrison. Its entry read:

**{¶ 9}** "R.C. 2967.28(B)(1) states that each sentence for a felony sex offense *shall* contain a five-year period of post release control. Because the court, and the Parole Authority for that matter, has no discretion to avoid the imposition of post release control in this case, any order other than a resentencing would constitute an attempt to render the statutory mandatory term of five years of post release control a nullity. See (*State v. Harris,* 2003 WL 760156 (Ohio App. 8 Dist.) 2003-Ohio-1003)." (Emphasis sic.)

**{¶ 10}** The court made clear in its entry that it would be resentencing Harrison, but it also offered Harrison the opportunity to withdraw his plea:

**{¶ 11}** "The court, therefore, orders this matter set for resentencing in accordance with the requirements of R.C. 2967.28(B).

**{¶ 12}** "The court further will grant the defendant leave prior to the resentencing hearing to withdraw his pleas of guilty to Counts V and VI since the court erroneously informed the defendant of the terms of post release control for those counts during the guilty plea dialogue."

**{¶ 13}** On March 25, 2005, Harrison filed a petition for a writ of prohibition in the Third District Court of Appeals to prevent the trial court from proceeding with the resentencing. On March 28, 2005, Harrison filed a motion to stay the resentencing hearing until the appellate court ruled upon his prohibition petition. In an entry signed that same day, the trial court denied the motion for stay. The appellate court thus had not ruled upon Harrison's prohibition petition at the time of the March 29, 2005 resentencing hearing.

**{¶ 14}** At the resentencing hearing, the court engaged in a direct conversation with Harrison and his attorney regarding the withdrawal of Harrison's guilty pleas:

{¶ 15} "THE COURT: This matter comes on today for resentencing pursuant to the Court's entry and order of March 22nd of 2005 and filed on March 23rd of 2005, finding that the Court had erred at the original sentencing hearing by failing to sentence the Defendant to a mandatory five (5) years of Post Release Control for violations of Ohio Revised Code Section 2907.321(A)(5) and Revised Code Section 2907.32(A)(5). The Court has further granted the Defendant leave to withdraw his guilty pleas in this case due to the fact that at the arraignment and guilty plea, the Court had advised the Defendant that his sentence for these offenses to which he was pleading may result in three (3) years of Post Release Control rather than the mandatory five (5) years of Post Release Control. At this time, does the Defendant wish to withdraw his pleas of guilty in this case?

{¶ 16} "MR. SIRAK: Your Honor, on behalf of my client, he wishes to WITHDRAW his guilty pleas.

{¶ 17} "THE COURT: Mr. Harrison, is that your wish?

{¶ 18} "DAVID HARRISON: Yes Sir, Your Honor, it is my wish.

{¶ 19} "THE COURT: Do you understand that the sole purpose of this sentencing only deals with the issue of the five (5) years of mandatory Post Release Control and your prison sentence wouldn't be changed. Do you understand that?

{¶ 20} "DAVID HARRISON: I understand, Your Honor.

{¶ 21} "THE COURT: And that your attorney has indicated that if the five (5) years of Post Release Control are imposed that he would, of course, take that to the Court of Appeals and it's this Court's opinion that his argument is not without merit. Do you understand that?

{¶ 22} "DAVID HARRISON: Yes Sir, Your Honor.

{¶ 23} "THE COURT: And knowing all that, is it still your desire to withdraw your pleas of guilty in this case?

{¶ 24} "DAVID HARRISON: Yes, Sir."

**{¶ 25}** Thus, the court alerted Harrison that the resentencing would pertain only to the mandatory postrelease-control period of five years and that his prison sentence would not be changed. The court further established that Harrison could appeal any resentencing and even suggested that defense counsel's argument was "not without merit."

**{¶ 26}** Later, Special Prosecutor Scott A. Longo revealed that he, the judge, and Harrison's counsel had discussed the plea withdrawal before the resentencing hearing. During that discussion, Longo announced that if Harrison withdrew his guilty plea, Longo would present the same case to the grand jury for an indictment and reprosecution.

**{¶ 27}** Still, Harrison sought to withdraw his former guilty plea; the court granted the plea withdrawal by entry of March 29, 2005.

**{¶ 28}** After the hearing, on March 31, 2005, the Third District Court of Appeals dismissed Harrison's petition for a writ of prohibition. [*State ex rel.*] *Harrison v. Steele*, Auglaize App. No. 2-05-14, 2005-Ohio-1608, 2005 WL 742691. The court of appeals held that "[p]rohibition will not lie to prevent an anticipated erroneous judgment." Id. at ¶ 5. It further held that there was an adequate remedy in the law to address his cause by way of an appeal. Id. at ¶ 8. The court stated that Harrison, if resentenced, could "seek to stay execution of the judgment and raise any error or irregularity in the re-sentencing order on appeal." Id.

**{¶ 29}** Harrison's plea having been withdrawn, the trial court could not resentence him. The court set bond, and Harrison registered a continuing objection as to the court's jurisdiction. On May 5, 2005, the special prosecutor dismissed the original case against Harrison, *State v. Harrison,* Auglaize C.P. No. 2003-CR-0083. But this did not end the prosecution of Harrison.

**{¶ 30}** On June 23, 2005, the Auglaize County Grand Jury indicted Harrison in a 23-count indictment, based upon the same general set of

6

circumstances as the original complaint against him. *State v. Harrison*, Auglaize C.P. No. 2005-CR-10-099. On October 6, 2005, at Harrison's request, the Auglaize County court transferred his case to the Madison County Common Pleas Court. The matter proceeded to jury trial on March 6, 2006, and the jury returned its verdict on March 13, 2006, finding Harrison guilty on 18 counts, including two counts of unauthorized use of a computer pursuant to R.C. 2913.04(B), one count of theft in office pursuant to R.C. 2921.41(A)(1), and 15 counts of illegal use of a minor in nudity-oriented material pursuant to R.C. 2907.323(A)(1). In the second prosecution, the prosecutor had charged Harrison with a violation of R.C. 2907.323(A)(1) for each individual image of a child.

{¶ 31} On April 7, 2006, Harrison filed a petition for a writ of prohibition in the Twelfth District Court of Appeals asking for an order preventing the trial court from proceeding with sentencing; the Twelfth District Court of Appeals eventually denied Harrison's petition for a writ of prohibition on June 9, 2006.

{¶ 32} On May 5, 2006, Harrison filed a motion to dismiss in the trial court. In the motion, Harrison argued that he had withdrawn his guilty plea in the first action because he had relied upon the trial court's assertion of authority to resentence him. He argued that the trial court never had that authority based upon this court's holding in *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, which established that a trial court has no authority to resentence a defendant once the defendant has served the term the court had previously imposed. Harrison argued that "in light of *Hernandez*, his plea withdrawal is a nullity as his case was over and there was no active or pending case from which to withdraw a plea. * * * Since his plea withdrawal is a nullity, case no. 2005-CR-10-099 was unconstitutionally filed in violation of [his] right against Double Jeopardy." The trial court denied the motion to dismiss on June 26, 2006. The parties agree that the trial court's sentencing entry imposed an aggregate term of six years' incarceration, with credit for the one year already served. Harrison was

also designated a sexually oriented offender. Harrison appealed the verdicts, and the Twelfth District affirmed the convictions on December 28, 2007.

{¶ 33} The cause is before this court upon the acceptance of a discretionary appeal.

## Law and Analysis

{¶ 34} The journey this case has taken is lamentable. We hope it will never be repeated. This case lands here today because after Harrison completed his sentence following a guilty plea, the state sought a resentencing that the trial court lacked the jurisdiction to impose. The trial court, however, moved forward as if it did have such jurisdiction. Harrison fought the resentencing at the appellate court through a writ of prohibition, but the trial court acted before the appellate court had issued its opinion that the matter was not yet ripe. Faced with a resentencing, Harrison sought to withdraw his original guilty plea. The trial court accepted the plea withdrawal, which meant that the court could not resentence him. Thus, Harrison is not appealing an unauthorized resentencing. Instead, he is appealing the entirety of the state's prosecution redux. We agree that the second prosecution emanated from the trial court's improper assertion of jurisdiction and that the plea agreement, guilty plea, and completed sentence in the first prosecution ended the state's case against Harrison.

{¶ 35} There is no dispute that the trial court should have imposed mandatory postrelease control on Harrison at his original sentencing. But the trial court's authority to repair that omission ended when Harrison completed his original one-year incarceration. This court's recent jurisprudence is unmistakable on that point. Before Harrison completed his incarceration, the state could have sought a correction of that error, and the trial court could have resentenced Harrison to include mandatory postrelease control, but that power ended once Harrison was released: "[I]n cases in which a defendant is convicted of, or pleads guilty to, an offense for which postrelease control is required but not properly

8

included in the sentence, the sentence is void, and the state is entitled to a new sentencing hearing to have postrelease control imposed on the defendant *unless the defendant has completed his sentence*." (Emphasis added.) *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 6.

{¶ 36} In *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 18, this court held that since the defendant had already served the prison term ordered by the trial court, he could not be resentenced in order to correct the trial court's failure to impose postrelease control at the defendant's original sentencing hearing. Further, in *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 32, this court held that resentencing to impose postrelease control is not an option once the defendant had completed his prison term.

{¶ 37} Again, the trial court in the first case did not resentence Harrison; it instead allowed Harrison to withdraw his guilty plea. In a vacuum, the trial court could have accepted the withdrawal of Harrison's plea even after he had completed his sentence, had he shown the "manifest injustice" required by Crim.R. 32.1. But Crim.R. 32.1 applies in instances where defendants seek a plea withdrawal of their own volition. Here, the defendant was hauled into court and informed that he would be resentenced unless he withdrew his plea. The trial judge presented Harrison with a Morton's Fork; whether Harrison chose the correct tine upon which to be impaled is not the question. The question is whether the trial court had the authority to require Harrison to make a choice at all. Clearly, it did not. Harrison had served his sentence, and the case was over. The entire attempt at resentencing and the related plea withdrawal were nullities. Thus, the plea agreement, guilty plea, and sentence as served survived as though the court's attempt at resentencing had never occurred.

{¶ 38} With the plea agreement in place, could the state have pursued further charges against Harrison? In *State v. Carpenter* (1993), 68 Ohio St.3d 59,

61, 623 N.E.2d 66, this court discussed the role of plea agreements in the administration of justice and in declaring a matter closed:

{¶ 39} "Plea agreements are an essential and necessary part of the administration of justice. *Santobello v. New York* (1971), 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432. 'Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons.' *Id.* at 261, 92 S.Ct. at 498, 30 L.Ed.2d at 432. 'This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.' *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433."

{¶ 40} In *Carpenter*, after plea negotiations with the state, the defendant entered a guilty plea to attempted felonious assault. At the time of the negotiations, the state was aware that the defendant's victim was likely to die of the injuries inflicted by the defendant, but the plea agreement contained no reference to additional prosecution in the event of the alleged victim's death. The defendant was sentenced to a term of two to ten years' imprisonment, and while the defendant was serving his sentence, the victim died. After serving almost three years of his sentence, the defendant was released from prison. Several months later, he was indicted for the murder of the victim.

{¶ 41} This court discussed the expectation of both the defendant and the prosecution in arriving at a plea agreement and noted that each side bargains away its desired outcome for the benefit of certainty:

{¶ 42} "By accepting a plea to a lesser included charge, the state obtained a definite prison term for the defendant and avoided the uncertainties of trial. In exchange, the appellant anticipated that by pleading guilty to attempted felonious assault, and giving up rights which may have resulted in his acquittal, he was terminating the incident and could not be called on to account further on any

charges regarding this incident." *Carpenter*, 68 Ohio St.3d at 61-62, 623 N.E.2d 66.

{¶ 43} The key to the continued validity of the plea agreement in *Carpenter* was the reasonableness of the defendant's expectation that the prosecution would end:

{¶ 44} "We think this expectation was entirely reasonable and justified and that the prosecutor was aware of this expectation. Therefore, if the state wanted to reserve its right to bring further charges later, should the victim die, the state should have made such a reservation a part of the record." Id. at 62, 623 N.E.2d 66.

{¶ 45} The focus in *Carpenter* was on the reasonableness of the defendant's belief that the plea agreement would terminate any future charges based upon the same incident. In *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, this court again considered the impact of plea agreements on subsequent prosecutions arising out of the same events and the reasonableness of the expectation of termination of the charges. In *Zima*, the defendant drove her vehicle left of center and collided with a motorcyclist. On July 6, 2001, three days after the incident, the city of Cleveland filed a complaint in the Cleveland Municipal Court charging Zima with driving under the influence in violation of Cleveland Codified Ordinances 433.01(a)(1), driving under suspension, failure to yield, and failure to wear a seatbelt. On August 23, 2001, a Cuyahoga County grand jury returned a three-count indictment against Zima, charging her with aggravated vehicular assault in violation of R.C. 2903.08 on the basis that she was driving under the influence, aggravated vehicular assault in violation of R.C. 2903.08 on the basis that she was driving recklessly, and driving under the influence in violation of R.C. 4511.19.

{¶ 46} On August 27, 2001, unaware of the charges pending against her in the common pleas court, the defendant, after plea negotiations with the city,

entered a no-contest plea in municipal court to the charge of driving under the influence, for which she was found guilty. As part of the plea agreement, the city nolled the three remaining municipal charges. After her sentencing in municipal court, Zima moved to dismiss the state charges in common pleas court on the ground that double jeopardy prohibited the additional charges.

**{¶ 47}** The *Zima* court wrote that the *Carpenter* court, in order to enforce the expectation that a plea agreement resolves all possible charges arising out of an incident, "found it necessary to recognize what is basically an implied promise on the part of the state not to prosecute the defendant for any further offenses that may arise out of the same incident." *Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 11. The court found that in *Carpenter* and in the New Jersey case upon which *Carpenter* relied, *State v. Thomas* (1972), 61 N.J. 314, 294 A.2d 57, "the defendant's expectation that his guilty plea would terminate the incident was inherently justified because the prosecutor and the court had jurisdiction over all the charges, both actual and potential, and because the negotiated guilty plea included the dismissal of all pending charges." *Zima* at ¶ 12. The court noted the importance of those factors in determining the reasonableness of a defendant's expectation of closure: "In the absence of these or equivalent circumstances, however, it would be exceedingly difficult to sustain a defendant's belief that no further charges will be brought or prosecuted." Id. In *Carpenter,* the victim's death occurred after the plea agreement, but in *Zima*, the court stated that "[t]he same inquiry into the reasonableness of the defendant's expectation would also be required in cases where, in Zima's phrase, 'all of the facts underlying the greater offense [are] known at the time of the plea.' " Id. at ¶ 13.

**{¶ 48}** In *Zima*, this court found that the defendant did not qualify for dismissal of the state charge, because the defendant had already been indicted for aggravated vehicular assault in the common pleas court by the time she had entered her plea in municipal court, and "[n]either the municipal court nor the city

prosecutor had the authority to dismiss those pending felony charges." Id. at ¶ 14. Thus, any expectation she had that she would be free from further charges was not reasonable. The court agreed with the statement by a member of the appellate panel that " '[a] defendant should be aware that a plea taken before a municipal judge with limited criminal jurisdiction might not dispose of the matter fully. Therefore, Zima cannot simply rely on an implied representation that no further charges would be brought but must articulate the circumstances showing why her belief was reasonable in this case, which she has failed to do.' 2002-Ohio-6327, 2002 WL 31618556, ¶ 44 (Kilbane, J., concurring in part and dissenting in part)." *Zima* at ¶ 14.

{¶ 49} This court in *Zima* pointed to *State v. Lordan* (1976), 116 N.H. 479, 363 A.2d 201, as an appropriate example of a plea agreement closing the door on any further action against the defendant arising from the same events. The court wrote in *Lordan*:

{¶ 50} "The prosecutor knew the facts on which the present charges are based at the time that the defendant pleaded guilty to the first three indictments. Nothing prevented the prosecutor from seeking the present indictments then. The submission and acceptance of the defendant's pleas to the first three indictments must have contemplated that no further charges would be brought, for the defendant by his pleas deprived himself of any meaningful defense to the present charges." Id. at 481, 363 A.2d 201.

{¶ 51} In *Lordan*, the defendant pleaded guilty to three charges. Later, the prosecutor recharged the defendant, adding the additional element to each charge that the defendant had used a pistol in committing the offenses. The court concluded: "Where the defendant commits several offenses in a single transaction and the prosecutor has knowledge of and jurisdiction over all these offenses and the defendant disposes of all charges then pending by a guilty plea to one or more of the charges, the prosecutor may not prefer additional charges arising from the

same transaction unless either he has given notice on the record at the time of the plea of the possibility that he may prefer further charges or the defendant otherwise knows or ought reasonably to expect that further charges may be brought." *Lordan*, 116 N.H. at 482, 363 A.2d 201.

{¶ 52} This case is more akin to *Lordan* than to *Zima*. Here, following a year-long BCI investigation, the prosecutor prepared a bill of information that was filed on June 17, 2003. On that same date, both the prosecutor and Harrison signed a negotiated plea agreement, wherein Harrison waived prosecution by indictment and consented to be prosecuted by the bill of information. He agreed to plead guilty to all the counts set forth in the bill of information. The prosecutor and the court, unlike in *Zima*, had jurisdiction over all of the actual and potential charges.

{¶ 53} Harrison was sentenced and served his jail term. The record reveals no further investigation of Harrison and no new information that would justify additional charges being brought against him. Instead, the special prosecutor stated in the hearing on Harrison's motion to dismiss that the second prosecution is purely the result of Harrison's withdrawal of his guilty plea in the first case. The special prosecutor told the judge:

{¶ 54} "There was a conversation that occurred between myself, Judge Steele, and Mr. Harrison's attorney on the telephone prior to the withdrawal.

{¶ 55} "* * *

{¶ 56} "The defendant was aware, counsel was aware, what the intentions were.

{¶ 57} "I was asked to come in as special prosecutor. I indicated to the court, that since he had not been before the grand jury, had not been indicted, * * * it was a bill of information that was crafted by the special prosecutor, that if he withdrew his plea that I was going to dismiss the case and take it to the grand jury and let the grand jury consider it.

**{¶ 58}** "Mr. Harrison knew what could happen.

**{¶ 59}** "He was aware that the court thought he had an appellate issue, and he voluntarily, intelligently, with counsel, * * * withdrew his guilty plea."

**{¶ 60}** The second prosecution occurred only because Harrison withdrew the guilty plea. The prosecutor believed that Harrison's plea withdrawal authorized the prosecution to essentially reboot its case against Harrison. However, since Harrison's plea withdrawal was the result of the trial court's wrongful assertion of jurisdiction, that plea withdrawal was invalid. The second prosecution as a whole was invalid because Harrison had a reasonable expectation that he could not be called on to account further on any charges arising out of the investigation that led to the original prosecution. As in *Carpenter*, this expectation was entirely reasonable and justified, and the prosecutor was aware of this expectation at the time of the plea agreement.

**{¶ 61}** The state urges that Harrison's failure to raise issues arising out of the forced plea withdrawal in a motion to dismiss before trial constituted a waiver of those rights. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists only if "but for the error, the outcome of the trial clearly would have been otherwise," and is applied "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 372 N.E.2d 804. The facts in this case satisfy the criteria for plain error: there should never have been a second prosecution.

**{¶ 62}** Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and TRAPP, JJ., concur.

O'DONNELL and LANZINGER, JJ., concur in judgment only.

MARY JANE TRAPP, J., of the Eleventh Appellate District, sitting for CUPP, J.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 63} I concur in judgment only. I do not agree that when mandatory postrelease control is not imposed a sentence is "void," meaning that the court lacked jurisdiction to impose it. Such an erroneous sentence is voidable, making the person subject to resentencing only if the original sentence has been properly appealed or if the court follows the procedure set forth in R.C. 2929.191.[1] See *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 74-76 (Lanzinger, J., concurring in part and dissenting in part).

_____

Scott A. Longo, Special Prosecuting Attorney for Auglaize County, for appellee.

Dean Boland, for appellant.

_____

1. The effect of R.C. 2929.191 is currently being questioned in case No. 2008-1255, *State v. Singleton*, Cuyahoga App. No. 90042, 2008-Ohio-2351, 2008 WL 2058571.