[Cite as *State v. Hauser*, 2016-Ohio-7710.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103880**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHN HAUSER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597360-A

**BEFORE:** Keough, P.J., McCormack, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** November 10, 2016

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road, Suite 405
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Owen M. Patton
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, John Hauser ("Hauser"), appeals his convictions. For the reasons that follow, we affirm his convictions, but vacate his sentence and remand for resentencing.

{¶2} In July 2015, Hauser was named in a three-count indictment charging him with one count each of aggravated robbery, kidnapping, and robbery. Hauser waived his right to a jury trial, and the case was tried to the bench where the following evidence was presented.

{¶3} On July 5, 2015, Hauser and the victim, Tiffanie Howard, agreed to meet at the University Inn and Suites for a sexual encounter. Howard testified that following the encounter, Hauser started acting "weird" and began ranting about how and why he robs people. According to Howard, Hauser told her that he conspires with his sister and the mother of his child to rob men who respond to their Backpage advertisement. In fact, he told her that his sister and mother of his child were currently in another room at the hotel, and he invited Howard to join them in their scheme. When Howard refused, Hauser told her she was not leaving the room until she agreed to be a part of their operation.

{¶4} After Howard refused to participate, Hauser confiscated both of Howard's cell phones, pulled a gun from his drawstring backpack, pointed it at her, and threatened to kill her. Howard testified that she was terrified and felt that she was unable to leave the hotel room. She stated that she was crying and asking him why he was doing this to her. After a period of time, she told Hauser to just shoot her if he was going to because

she felt like she was being tortured. At that point, Hauser told Howard to turn off the lights and lie down because he did not want to look at her eyes when he shot her. Howard complied; Hauser then left the room with Howard's belongings, including her cell phones, tablet, and duffel bag filled with her wallet and belongings.

{¶5} After five minutes, Howard went down to the hotel lobby and called the police, reporting that she had been robbed. The following day, Howard went to Tower City in downtown Cleveland. Upon exiting the main entrance, she saw Hauser standing outside talking with a female. Howard testified that she immediately went to the RTA transit police and told them that the man who had robbed her was standing outside. RTA officers apprehended Hauser, and when the Cleveland police arrived, they recovered some of Howard's property from Hauser's person. Specifically, they found 11 of her credit and debit cards, as well as her identification.

{¶6} On cross-examination, Howard admitted that she met up with Hauser for a sexual encounter after meeting him only two weeks prior. However, she denied that the rendevous with Hauser involved a July 5 posted Backpage ad involving a woman named "Bianca," and where one of her cell phone numbers was published, or that she was being paid for sex. She further denied that the photos in the Backpage ad were of her; she testified that they were of a girl named "Jackie." Howard explained that two of her friends, Brittany and Nicki, who is Jackie's roommate, used the Backpage ad, and that she allowed those friends to use her prepaid cell phone as the means of contact. Upon further questioning, she admitted that she uses the phone for business and sets up dates

for her friends on Backpage, and that she helped Jackie create the Backpage ad. Later, Howard testified that Nicki's real name is Jackie.

{¶7} Cleveland police officer David Price, testified that he responded to a dispatch call of a woman robbed at the University Inn and Suites. He and his partner arrived and met with Howard, who stated that she was robbed by a man at gunpoint after they had sex in the hotel. After conducting an investigation, Price and his partner took Howard to her friend's house. Officer Price denied that Howard was crying and stated that Howard did not tell them about the suspect having family members in a different room within the hotel.

{¶8} Regional Area Transit officer John Pechkurow testified that around 10 a.m. on July 6, 2015, he received a radio broadcast to assist his sergeant at Tower City with a robbery suspect. Pechkurow approached Hauser and told him that he matched the description of a robbery suspect. According to Pechkurow, Hauser appeared puzzled and confused, but cooperated and advised him that he had a firearm in his backpack. After searching both Hauser and his backpack, the officers found marijuana, a stack of credit cards, Howard's identification card, $160 in cash, and a 1911-style black firearm, which was later determined to be a BB gun. Most of the credit cards belonged to Howard. Later during booking, a cell phone was found on Hauser. Pechkurow testified that Hauser told them he was just "hanging with friends" at Tower City; not that he was meeting up with someone.

{¶9} The parties stipulated that Detective Ronald Berry would testify that on July 10, 2015, Starla Love, Hauser's girlfriend, delivered to the Third District Police Department a Kindle tablet and two cell phones — all belonging to Howard.

{¶10} Hauser testified in his defense. After admitting to his extensive felony record for convictions involving robbery and domestic violence, Hauser testified to a very different version of events. He stated that on July 5 he met Howard, who identified herself as "Bianca," at Rascal House. After initiating a conversation, they agreed that Hauser would pick the woman up later that evening at her residence at the University Inn and Suites.

{¶11} Hauser testified that he obtained a car from someone in the neighborhood and drove to University Inn and Suites where Howard, carrying a small purse or wallet, got into his car. They drove to Sweethearts bar, and before going inside, Howard placed some of her belongings in between the seats of the car.

{¶12} After visiting the bar, they went back to Howard's residence. Hauser testified that the people in the hotel lobby knew Howard and called her "Bianca." When they arrived in the room, Hauser plugged in his track phone and placed his other phone on the bed. They began watching a movie, and eventually had sex. After the encounter and as Hauser was getting dressed to leave, Howard asked him for payment of $50. When Hauser questioned her about payment, Howard showed him her Backpage ad. According to Hauser, Howard became angry when he refused to pay her because there was no agreement that he would pay her for sex. He subsequently left the hotel.

**{¶13}** Upon returning to the car, he noticed that some of Howard's belongings were still in his vehicle. He placed her stack of credit cards in his pocket and, fearing that his girlfriend would discover his indiscretion, hid her tablet in his folded pants once inside his girlfriend's home.

**{¶14}** The following morning, he received a telephone call from his ex-girlfriend asking for assistance with her son, who was brandishing a BB gun in the neighborhood. He went over to her house, retrieved the gun, and placed it in his backpack. At that point, he noticed he did not have his track phone with him, so he used his ex-girlfriend's phone to call his phone. According to Hauser, Howard answered his track phone. They agreed to meet in front of Tower City to exchange property. However, Hauser had only Howard's credit cards on his person at that time.

**{¶15}** Hauser testified that shortly after he arrived at Tower City, a police officer approached him, stating that Hauser fit the description of a robbery suspect, and he was detained. Hauser stated that he was "shocked and confused." The police discovered Howard's credit cards and the gun in his backpack. He admitted that he did not tell the police his side of the story when he was arrested. Hauser denied robbing Howard, but stated that he was set up over $50 for the nonpayment of sex.

**{¶16}** The court found Hauser guilty of all charges. The court merged the aggravated robbery and robbery charges, with the state electing that Hauser be sentenced on the aggravated robbery offense. Accordingly, the trial court ordered Hauser to serve seven years in prison on the aggravated robbery offense, consecutive to eight years on the

kidnapping offense, for a total prison sentence of 15 years. Additionally, the trial court ordered that Hauser pay a total fine of $10,000.

{¶17} Hauser now appeals, raising three assignments of error.

## I.   Manifest Weight of the Evidence

{¶18} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶19} In his first assignment of error, Hauser contends that his convictions for aggravated robbery, kidnapping, and robbery are against the manifest weight of the evidence because Howard's testimony was unreliable and inconsistent. We disagree.

{¶20}  Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and

observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The trier of fact may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Furthermore, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defense's version. *State v. Scott*, 10th Dist. Franklin No. 10AP-174, 2010-Ohio-5869, ¶ 16.

{¶21} In this case, Howard testified that after she and Hauser engaged in sex, Hauser started acting weird and told her about the scheme he and his family operate. When Howard refused to be a part of the operation, Hauser confiscated her property, pulled a gun from his backpack and pointed it at her. According to Howard, Hauser kept her in the room against her will, and when he finally left, he stole her cell phones, tablet, and credit cards.

{¶22} The following day, and admittedly very coincidentally, Howard saw Hauser standing in front of Tower City in downtown Cleveland. She reported Hauser's presence to RTA police, and after being apprehended and searched, the police found on Hauser's person a firearm, later determined to be a BB gun, as well as Howard's credit cards and identification. Later, Starla Love, Hauser's girlfriend, brought Howard's cell phones and electronic tablet to the police station.

{¶23} After reviewing the testimony and evidence at trial, the trier of fact could make reasonable inferences based on Howard's testimony that Hauser committed the offenses of aggravated robbery, kidnapping, and robbery. Howard's testimony established the material elements of each crime charged. Although we note that there were some inconsistencies in Howard's testimony, we cannot substitute our judgment for that of the trier of fact. The trial court was in the best position to view the credibility of the witnesses, and in fact, commented in rendering its verdict that it found the victim to be 100 percent believable, and found Hauser to be, if possible, "lower than zero" percent credible. (Tr. 236.) The court chose to believe, which it is permitted to do, the testimony of the state's witnesses and not believe Hauser's testimony that his arrest was a setup for nonpayment of sex.

{¶24} Accordingly, we cannot say that the court lost its way in finding Hauser guilty of aggravated robbery, kidnapping, and robbery. The first assignment of error is overruled.

## II. Imposition of Fines

{¶25} In his second assignment of error, Hauser contends that the trial court abused its discretion in imposing fines as part of his sentence.

{¶26} R.C. 2929.18(A) permits a trial court to impose a financial sanction and fine upon an offender who has committed a felony. Additionally, Ohio law does not prohibit a court from imposing a fine on an indigent defendant. *State v. Ramos*, 8th Dist. Cuyahoga No. 92357, 2009-Ohio-3064. Before doing so, however, "the court shall

consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5). "There are no express factors that must be taken into consideration nor specific findings that must be made by the court on the record, but there must be some evidence in the record that the trial court considered the defendant's ability to pay." *State v. Schneider*, 8th Dist. Cuyahoga No. 96953, 2012-Ohio-1740, ¶ 10, citing *State v. Jacobs*, 189 Ohio App.3d 283, 2010-Ohio-4010, 938 N.E.2d 79, ¶ 11 (8th Dist.).

**{¶27}** In deciding to impose a fine, the court stated,

> I'm also in your case going to fine you, because I want you to do hard time. So in both counts you're fined $5,000. So that people just can't put money on your books so that you can watch color TV at the joint and have Doritos and Ding Dongs and Ho Hos and get pop and stuff like that. You're not going to do that. You can make a lot of phone calls. You're going to pay a $10,000 fine first. You're going to pay your court costs.

(Tr. 252-253.)

**{¶28}** In this case, Hauser did not object to the fine at the sentencing hearing. The failure to object to the amount of the fine at a time when the trial court could correct that error constitutes a waiver of all but plain error. *State v. Barker*, 8th Dist. Cuyahoga No. 93574, 2010-Ohio-4480, ¶ 11. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "Plain error exists only if 'but for the error, the outcome of the trial clearly would have been otherwise, and is applied under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶29} In this case, there is no evidence that the court considered Hauser's present or future ability to pay the fine before imposing it. No presentence-investigative report was prepared to provide the trial court with pertinent information regarding Hauser's education and work history, and financial ability. Furthermore, Hauser was declared indigent, and was appointed trial counsel and remained in jail during the pendency of the case. Finally, no evidence was elicited at Hauser's sentencing hearing that would have indicated his current or future ability to pay the fine.

{¶30} The court recognized and noted that Hauser committed these offenses within 28 days of being released from prison. Although Hauser testified at trial that he was doing "under the table janitorial" work at the time of the offense, there was no indication that he had a verifiable job during that 28-day period. Moreover, Hauser was 37 years of age at the time of sentencing, and upon completion of his sentence would be age 52. The trial court's indication and reasons why Hauser needs to do "hard time," bear no relationship to Hauser's present and future ability to pay his fines.

{¶31} Accordingly, the court committed plain error in failing to consider his present and future ability to pay his fines as required under R.C. 2929.19(B)(5). Hauser's second assignment of error is sustained.

### III. Consecutive Sentence Findings

{¶32} In his third assignment of error, Hauser contends that the trial court failed to make the requisite findings pursuant to R.C. 2929.14(C)(4) prior to imposing consecutive sentences.

**{¶33}** R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

**{¶34}** R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences (1) are necessary to protect the public from future crime or to punish the offender, (2) would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶35}** Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio

St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

**{¶36}** On appeal, Hauser contends that the trial court failed to make the requisite findings prior to imposing consecutive sentences. Specifically, Hauser contends that the trial court failed to make the second finding, that consecutive sentences would not be disproportionate to the seriousness of his conduct and to the danger the offender poses to the public.

**{¶37}** After reviewing the sentencing transcript, we find that the trial court did not make the requisite R.C. 2929.14(C)(4) findings in support of its imposition of consecutive sentences. In making the first finding, the court stated "this sentence is obviously in his case necessary to protect the public, for goodness sake, and to punish this offender." (Tr. 251.) In making the third finding, the court stated

> I want to indicate that this crime was committed while this individual was under a post-release control sanction. This crime was committed 28 days after he was released from a state penal institution. The harm that he has inflicted upon this community and upon this victim is so great that no single term adequately reflects the seriousness of this conduct. And by the way, this offender's criminal history shows that consecutive terms are necessary to protect the public.

(Tr. 251-252.) However, the trial court failed to make any statements where we can discern from the record that the court was satisfying its requirement to make the second finding — commonly referred to as the "disproportionate" finding. Therefore, we conclude that the trial court did not make all of the appropriate consecutive sentence findings required under R.C. 2929.14(C)(4).

**{¶38}** Accordingly, we vacate Hauser's sentence and remand the case for resentencing for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make the required findings on the record and incorporate those findings in the sentencing journal entry in accordance with *Bonnell*. Hauser's third assignment of error is sustained.

**{¶39}** Convictions affirmed; sentence is vacated, and the case is remanded for resentencing.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

TIM McCORMACK, J., and
ANITA LASTER MAYS, J., CONCUR