[Cite as *In re A.E.*, 2023-Ohio-4217.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.E.                                  :

                                      No. 112615

                                     :

                                     :

                                     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 22, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL22105013

---

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Danielle Muster, Assistant Prosecuting Attorney, *for appellee.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, A.E., appeals his adjudication of delinquency on one count of gross sexual imposition. For the reasons that follow, we affirm.

{¶ 2} A.E. was charged with two counts of gross sexual imposition. Count 1 alleged gross sexual imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4). Count 2 alleged gross sexual imposition, a felony of the fourth degree, in violation of R.C. 2907.05(A)(1).

{¶ 3} The state gave notice that it intended to introduce statements of the child victim through other witnesses, pursuant to Evid.R. 807. Before trial, the court held an in camera hearing and found that the victim, age four, was not competent to testify. The court also heard arguments from the parties regarding the state's Evid.R. 807 motion. The court held the motion in abeyance, and the matter proceeded to trial. During trial, the court granted the state's motion.

{¶ 4} K.B., the child victim's mother, testified that she and A.E.'s mother were very close and A.E. or his sister often babysat her two young girls. One Tuesday in March, K.B. dropped her children off at A.E.'s house; A.E.'s sister was supposed to babysit. K.B. picked them up the next morning, Wednesday, and took them to school. That night she gave both girls a bath.

{¶ 5} The next day, Thursday, K.B. was getting her daughters ready for a bath, when her four-year-old daughter said "mommy, [A.E.] did like this to my no-no spot." K.B. explained that her daughter made a "flicking motion" with her two fingers and referred to her vagina as her "no-no spot." According to K.B., the child told her that A.E. pulled her pants down. K.B. asked her daughter if A.E. had taken out his no-no spot and she said no. K.B. asked where A.E.'s mother was when this happened, and the child said A.E.'s mother was in her bedroom. The child told her

mother that this occurred in A.E.'s bedroom while the child's sister was sleeping. According to K.B., the child told A.E. to stop, but he did not. A.E. then said, "this isn't me," and left the room. K.B. took her daughter to the hospital immediately after her disclosure.

{¶ 6} K.B. testified that after the disclosure, the child's daycare teacher told K.B. that the child had been "down," whiny, and refusing to use the bathroom. Soon after the disclosure, the child was removed from the daycare due to behavioral issues.

{¶ 7} Nia Long, a sexual assault nurse examiner ("SANE"), performed the examination on the child. According to Long, the child victim told her that she was at A.E.'s house when he took her to his room and "started playing on her no-no place" and that she told him to stop but he did not. The child told Long that A.E. stated "this isn't me" and then left. Long performed an age-appropriate examination and found some redness on the labia majora and vestibule area. Because of her age, the child was not able to give a numerical value to any pain she was having, but she told Long she was in pain, and Long noted that the child indicated that the pain was in the same location where Long observed redness. Long testified that redness is not a "normal finding"; "it's not consistent with [the child's] skin color."

{¶ 8} Long testified that the child's demeanor during the exam was normal, other than the child being sleepy. Long acknowledged that the redness could have been caused by something other than a sexual assault.

{¶ 9} Re'Gine Wells was the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency") social worker assigned to the case. During her brief interview with the child, she asked the child if anyone touched her "no-no" spot or her "booty." At first the child said no, but then disclosed that A.E. had touched her "no-no" spot. The child told Wells that this happened in A.E.'s bedroom and it was just the two of them. She also told the social worker that she felt sad and that her "no-no" spot felt "hurtful." Wells testified that the child told her that A.E. had stated that "it wasn't him." Wells testified that when the child told her what had happened to her she became very soft spoken, "shut down," and walked out of the interview room. On cross-examination, Wells testified that the child initially answered "no" when she asked if anyone touched her and then mentioned A.E.

{¶ 10} The child's preschool teacher testified that the child's father died in February; since then, the child had been "very clingy" and that "[s]he wanted her mom a lot, didn't want to use the bathroom, and she cried a lot." The child had "been doing this for a while after her father passed away."

{¶ 11} The investigating detective, Detective James Seawright, testified that he spoke with the child's mother, A.E., and A.E.'s mother. Seawright also performed a buccal swab on A.E. and sent it for analysis.

{¶ 12} Ohio Bureau of Criminal Investigations analyst Andrea Dennis explained the steps for generating traditional and Y-STR DNA analysis. She testified that she tested skin swabs of the child's external genitalia and inner thigh. Dennis testified that there was not enough DNA to be able to create a profile for

identification.  She testified that there was a Y-STR profile from a male, but there was not enough to identify a person.[1]

{¶ 13}  A.E.'s 19-year-old sister, I.E., testified that she would babysit the child and her sister, often overnight.  I.E. would take the children to her room, where they would watch television and fall asleep.  According to I.E., she last babysat for the victim in February, not March, when this was said to have occurred.  I.E. explained that her room was on the first floor of the house and that the victim would never go upstairs because there was nothing up there besides A.E.'s room, which no one went into because it was dirty.  The last time I.E. babysat the children, A.E. was at home, but he spent the night in his room.  I.E. testified she was with the children the entire time except when she was in the shower.

{¶ 14}  The trial court adjudicated A.E. delinquent of both counts of gross sexual imposition and imposed a consecutive suspended Ohio Department of Youth Services ("ODYS) commitment.  The court also placed A.E. on a single term of community-control sanctions.

{¶ 15}  A.E. filed a notice of appeal.

{¶ 16}  In June 2023, after the parties filed their appellate briefs, this court sua sponte ordered the parties to brief the issue of whether the trial court's delinquency adjudication and disposition, which imposed a single term of a community-control sanctions, was a final, appealable order.  The parties submitted

---

[1] Dennis's testimony was during a time in the trial that the audio recording was not working.  The trial court summarized Dennis's testimony on the record.

briefs, and this court dismissed the appeal for lack of a final appealable order, finding it was error for the trial court to impose a single community-control sanction on two counts of gross sexual imposition. *See* motion No. 565870. This court also granted leave for A.E. to move to reinstate the appeal within 45 days "upon obtaining a final judgment that does not impose a single term of community control with regard to separate dispositions." *Id.*

{¶ 17} The trial court held another dispositional hearing at which the assistant county prosecutor informed the court that the two counts of gross sexual imposition were allied offenses of similar import and should therefore merge. The state elected to proceed to disposition on Count 1, gross sexual imposition, R.C. 2907.05(A)(4), a third-degree felony. The court imposed a suspended ODYS commitment and a two-year term of community control on the sole remaining count. Counsel for A.E. moved to reinstate his appeal, which this court granted.

{¶ 18} A.E. raises the following assignments of error for our review:

I. The trial court erred by permitting out-of-court statements pursuant to Evid.R. 807 and 803.

II. The trial court [finding] appellant delinquent [was] against the manifest weight of the evidence.

III. The trial court erred by imposing consecutive ODYS commitments on allied offenses.

{¶ 19} In the first assignment of error, A.E. contends that the trial court erred by permitting into evidence out-of-court statements that the victim made to other people.

**Hearsay – Evid.R. 807**

{¶ 20} Generally hearsay is not admissible at trial. Evid.R. 802. However, hearsay evidence may be admissible if it falls under enumerated exceptions. In pertinent part, Evid.R. 807(A) allows out-of-court statements made by a child under the age of twelve to be admitted where those statements describe a sexual act performed by, with, or on the child. A trial court's decision to admit statements under Evid.R. 807 is reviewed for an abuse of discretion. *State v. Singleton*, 2016-Ohio-4696, 69 N.E.3d 118, ¶ 21 (8th Dist.), citing *In re A.K.*, 2d Dist. Montgomery No. 26199, 2015-Ohio-30, ¶ 16. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 21} The Evid.R. 807 hearsay exception for statements made by children under the age of twelve concerning sex abuse contains four requirements for admissions of such statements: (1) the statement must be trustworthy; (2) the child's testimony must be unavailable; (3) independent proof of the act must exist; and (4) the proponent must notify all other parties ten days before trial that such a statement will be offered in evidence. Evid.R. 807(A)(1)-(4).

{¶ 22} A.E. argues that the state failed to show "independent proof of sexual assault" under Evid.R. 807(A)(3).[2] The Staff Notes to Evid.R. 807 provide that "the

---

[2] A.E. does not contest that the statement was trustworthy, that the child's testimony was unavailable, or that he was notified at least ten days before trial.

independent-proof requirement of Evid.R. 807 is comparable to the independent-proof requirement of the co-conspirator exception, Evid.R. 801(D)(2)(e)." "Thus, while the rule does not specifically indicate the nature of the independent proof required, we may derive guidance from the co-conspirator exception, where independent proof has been subject to a 'prima facie case' standard." *State v. Black*, 87 Ohio App.3d 724, 729, 622 N.E.2d 1166 (4th Dist.1993), citing Weissenberger, *Ohio Evidence*, Section 807.5, at 204-8 (1993).

{¶ 23} A prima facie showing of a fact is a lower standard than proof by a preponderance of the evidence. *State v. Meadows*, 4th Dist. Scioto No. 99CA2651, 2001 Ohio App. LEXIS 3120, 18 (Feb. 12, 2001). Prima facie evidence is evidence "sufficient to support but not to compel a certain conclusion and which does no more than furnish evidence to be considered and weighed but not necessarily accepted by the trier of fact." *State v. Martin*, 9 Ohio App.3d 150, 152, 458 N.E.2d 898 (11th Dist.1983), citing *Cleveland v. Keah*, 157 Ohio St. 331, 105 N.E.2d 402 (1952). Thus, the relevant inquiry is "whether the proponent of a hearsay statement has presented sufficient evidence, independent of the statement itself, to support a finding that an act of abuse occurred." *Meadows* at *id.*

{¶ 24} The state presented evidence through Long, the SANE nurse, who testified she noted erythema, or redness, on the child's labia majora and vestibule during the exam. A.E. contends that this is insufficient because Long did not have

Evid.R. 807(A)(1), (2), (4). Therefore, we will consider only whether the state showed independent proof of gross sexual imposition.

specialized training in pediatric exams and Long did not conclude that a sexual assault occurred.

{¶ 25} Long testified that she has a Bachelor of Science in nursing and is a specialized SANE nurse. To become a SANE nurse, Long completed a 40-hour training course through the International Association for Forensic Nursing, which was hands-on training with practice kits, evidence collection, speculum exams, and practice taking patient narratives. Once a year, Long completes "competencies," where she reviews skills that are required for SANE evaluations. Long estimated that she has performed at least 70 SANE exams. Long explained the importance of the narrative portion of a SANE examination, which helps with evidence collection and aiding in the physical examination, including the examination of children. Long further explained that the protocol does not call for an internal exam of a four-year-old child victim and she did not perform one in this case.

{¶ 26} Long testified that the child disclosed pain but was unable to place a numerical value on the pain due to her age. The redness was located on the labia majora, or outer lips of the vagina, and the child showed that the pain was located "where the redness was." Long testified that redness in the area of the victim's vagina "would not be considered normal," but could have had a cause other than sexual assault. However, Long testified, the redness she observed on the victim's vagina was unusual for a person of the victim's skin color. Long further testified that not all sexual assault show injuries: "some do, some do not, so we can't base our evaluation off injuries, and we don't determine if there was a sexual assault or not.

We just collect evidence for it." Thus, per Long's testimony, she would not conclude that a sexual assault occurred because it is not part of the evaluation and treatment of a patient.

{¶ 27} In light of the nurse's testimony, we do not find that the trial court abused its discretion in finding that the state showed independent proof, i.e., made a prima facie showing as is required by Evid.R. 807(A)(3).

**Hearsay – Evid.R. 803(4)**

{¶ 28} A.E. next claims that the trial court abused its discretion when it allowed into testimony statements the child victim made to Long and the agency social worker, Wells.

{¶ 29} Evid.R. 103(A) provides that an objection to the admission of evidence at trial must state the ground for the objection with specificity. *State v. Daniels*, 9th Dist. Lorain No. 03CA008261, 2004-Ohio-828, ¶ 33; *see also State v. Harris*, 10th Dist. Franklin Nos. 21AP-678 and 22AP-124, 2023-Ohio-3994; *State v. Willett*, 4th Dist. Ross No. 11CA3260, 2012-Ohio-2186.

{¶ 30} Evid.R. 803(4) states that the following are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This court "has previously upheld testimony by SANE nurses regarding what the minor child victims told them,

provided it was purposed for medical diagnosis and treatment." *In re M.P.*, 8th Dist. Cuyahoga No. 111608, 2023-Ohio-925, ¶ 29.

**{¶ 31}** Our review of the record reveals that counsel for A.E. objected to Long's testimony pursuant to Evid.R. 807, not Evid.R 803(4), and objected to the social worker's testimony as a "continuing hearsay objection." Counsel never argued at trial that statements that the child made to Long or the social worker were inadmissible pursuant to Evid.R. 803(4). Thus, we could find that A.E. has waived any such issue on appeal, *Daniels* at *id.*, and is subject to the plain error rule.[3]

**{¶ 32}** Next, A.E. has not indicated which of the child victim's statements violated Evid.R. 803(4). A.E. cites Long's and Wells's testimony and argues why *their* statements were not for the purposes of treatment or diagnosis but does not identify which of the child's statements he is challenging. Regarding Long, A.E. states that "[t]he statement that the victim in this case made to the SANE nurse was not for the purpose of diagnosing or treating anything." Likewise, A.E. contends that the court "erred by permitting [Wells] to testify about what the child told her," but does not identify which statements he is challenging. The child did not make a single statement to Long or Wells; both witnesses testified about multiple

---

[3] "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "Plain error exists only if 'but for the error, the outcome of the trial clearly would have been otherwise,' and is applied 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Day*, 8th Dist. Cuyahoga No. 108435, 2020-Ohio-5259, ¶ 57, quoting *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61.

statements and disclosures the victim made to them.  It is not this court's duty to surmise which statements A.E. now has an objection to.

{¶ 33} Thus, because A.E. did not object with specificity in the trial court and has not indicated on appeal which statements he is challenging, we decline to address his argument regarding Evid.R. 803(4).

{¶ 34} The first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 35} In the second assignment of error, A.E. argues that his adjudication was against the manifest weight of the evidence.

{¶ 36} When considering a defendant's claim that a conviction is against the manifest weight of the evidence, the appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 37} In support of this claim that the adjudication was against the manifest weight of the evidence, A.E. argues that the victim's statements were not credible, evidence of the victim's changed behavior was not indicative that she had been

sexually assaulted, and the redness Long noted on the victim's vagina is not credible evidence of sexual assault.

{¶ 38} The four-year-old victim made consistent statements to her mother, the SANE nurse, and the agency social worker that A.E. touched her "no-no," she told him to stop but he would not stop, and that he said, "this isn't me" or something similar, before stopping and leaving the room.

{¶ 39} Both the child's mother and preschool teacher testified that the victim's behavior changed, so much so that the child was no longer allowed to attend her daycare. Although the teacher testified she noticed changes in the child's behavior prior to when the alleged assault took place, we do not find that any inconsistencies in the teacher and mother's testimonies render the court's verdict unreliable.

{¶ 40} Finally, Long, the SANE nurse, testified that she noted redness on the victim's labia majora and vestibule area and that the child told her she was having pain; the nurse further noted that the pain was consistent with where the redness was located. Long explained that the redness she observed was unusual for a person of the child's skin color.

{¶ 41} A.E. next argues that his sister gave credible testimony and the competing theories give way to reasonable doubt. We do not find that the sister's testimony was in vast contradiction to that of the other witnesses — the main contradiction was that I.E. testified the child never went in A.E.'s room because it was too dirty, and the child disclosed to the state's witnesses that the assault

occurred in A.E.'s bedroom. The sister admitted she was asleep when babysitting the children (she babysat them overnight) and was not watching them while she showered. Moreover, the trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85. "A conviction is not against the manifest weight of the evidence simply because the jury believed the testimony of the state's witnesses and disbelieved the defendant's [witnesses]." *Id.*

{¶ 42} This is not the exceptional case in which the evidence weighs heavily against A.E.'s adjudication of delinquency for gross sexual imposition.

{¶ 43} The second assignment of error is overruled.

**Consecutive Sentences**

{¶ 44} In the third assignment of error, A.E. argues that the trial court erred in imposing consecutive dispositions for two counts of gross sexual imposition.

{¶ 45} As mentioned, this court previously dismissed the appeal for lack of a final, appealable order. The trial court held a dispositional hearing at which it merged A.E.'s gross sexual imposition counts and imposed a single sentence. This court reinstated the appeal. Because there is only one finding of delinquency for gross sexual imposition and no consecutive dispositions were imposed, the assignment of error is summarily overruled.

**Conclusion**

{¶ 46} The trial court did not abuse its discretion in allowing testimony pursuant to the hearsay exception enumerated in Evid.R. 807. A.E.'s conviction for

gross sexual imposition is not against the manifest weight of the evidence and his argument that the trial court erred in imposing consecutive dispositions is overruled because, after this court dismissed the initial appeal, the trial court imposed a single disposition.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR