[Cite as *State v. Simmons* , 2018-Ohio-3366.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106179**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ANTHONY SIMMONS**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-616092-A

**BEFORE:** S. Gallagher, J., E.T. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEY FOR APPELLANT**

John T. Castele
Rockefeller Building, Suite 1310
614 W. Superior Avenue
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Blaise D. Thomas
            Kelly N. Mason
Assistant Prosecuting Attorneys
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant Anthony Simmons appeals his conviction and sentence. Upon review, we affirm.

{¶2} Simmons was charged under a six-count indictment with offenses related to the shooting death of the victim. Simmons was charged with two counts of aggravated murder and one count each of aggravated robbery, murder, felonious assault, and having a weapon while under disability. A codefendant, Ciera Johnson, also was charged under the indictment. Another individual, Timothy Dancy, who was charged under an initial indictment as a codefendant, entered a plea bargain with the state and testified in this case.

{¶3} At trial, Dancy's testimony provided a detailed account of the crimes. According to Dancy, before the shooting Dancy, Simmons, and Johnson were at Simmons's house. They all wanted to "smoke weed," but none of them had money. They agreed they would rob the victim for his weed, and Simmons suggested they kill him because the victim knew Simmons. There also was testimony to suggest that Simmons's motive for wanting to kill the victim was because the victim had sexual relations with Johnson, who was Simmons's girlfriend.

{¶4} Dancy testified that in response to Simmons's suggestion that they kill the victim, Dancy stated he was "cool with that" and Johnson stated "it was all right" and she "didn't give a f*** about him." Dancy stated that after this conversation, Johnson called the victim, told him she wanted to buy some weed, and asked where to meet him. Cell phone records confirmed a call was placed to the victim from Johnson's phone.

**{¶5}** Dancy testified that after Johnson made the phone call, he and Simmons left in Simmons's white Kia Forte and went to the victim's home. According to Dancy, both he and Simmons shot the victim numerous times in the victim's driveway. Dancy stated that he used a Glock 9 mm handgun and Simmons used a .45-caliber pistol. There was evidence that the victim was shot as many as 22 times and that the shots had come from multiple angles.

**{¶6}** Dancy testified that Simmons took money from the victim's pocket, and that they took $150 to $240 from the victim. Dancy stated that he and Simmons left the scene in Simmons's white Kia and went to his cousin's apartment, where he was staying with another cousin, Eric Turner. While at the apartment, Dancy and Simmons used bleach to wash blood off the stolen money and then placed the money on a heater to dry.

**{¶7}** Dancy testified that the next day, he and Simmons went to Walmart and purchased 9 mm and .45-caliber bullets, as well as bullets for another gun. A receipt and a video of the transaction were introduced at trial. Dancy stated that he returned to his cousin's apartment, got into an argument with Turner, and threatened to shoot Turner.

**{¶8}** Dancy testified that there came a point that week when he was involved with a police chase. He stated that he dropped Simmons off, and Dancy drove the white Kia to his mother's house. After spotting the police, Dancy led them on a high-speed chase and threw his 9 mm handgun out the window.

**{¶9}** Other witnesses testified with regard to the shooting. These witnesses testified to hearing gunshots and seeing a white vehicle parked in the street, a man running to the passenger side, and the vehicle leaving. Responding officers learned that two people were involved in the shooting. Cell phone records placed Simmons in the area of the homicide.

{¶10} Turner testified that once Dancy and Simmons arrived at the apartment, they talked about how they "lit a nigga up," which meant they had shot and killed someone. Turner also testified that they brought in two or three guns and had bloody money that they cleaned with bleach and dried on a heater.

{¶11} Evidence at trial linked bullets and casings that were recovered to the 9 mm handgun Dancy had thrown out the car window. The 9 mm handgun also was linked to Dancy's DNA. Dancy initially lied to police and denied responsibility; however, he later agreed to cooperate with the state in exchange for a plea bargain.

{¶12} Shortly after Dancy was arrested, Simmons reported that his white Kia had been stolen. During a search of Johnson's car, detectives found Simmons's checkbook and clothing items along with a .45-caliber casing. Other testimony and evidence linking Simmons to the crimes also were introduced in the case. The evidence included text messages exchanged between Simmons and Johnson two days after the murder, in which they discuss the house being "hot," Johnson hiding appellant's gun inside the house, and Simmons getting a new cell phone. The day appellant was arrested, he sent a message to Johnson stating "they got me. I love you." Simmons also was in frequent contact with Dancy's mother after Dancy was arrested and asked questions about Dancy's case and Simmons's car.

{¶13} The jury found Simmons guilty of Counts 1 through 5 with accompanying firearm and forfeiture specifications. The trial court found Simmons guilty of Count 6 and the notice of prior conviction and repeat violent offender specifications under Counts 3, 4, and 5. The trial court merged Counts 1, 4, and 5 into Count 2 and proceeded to sentencing on Count 2, aggravated murder (R.C. 2903.01(A)), Count 3, aggravated robbery (R.C. 2911.01(A)(1)), and Count 6, having a weapon while under disability (R.C. 2903.11(A)(2)). The trial court

sentenced Simmons to a total aggregate prison term of 36 years to life with five years of mandatory postrelease control.

{¶14} Appellant timely filed this appeal. He raises eight assignments of error for our review.

{¶15} Appellant's first assignment of error claims as follows:

I. The trial court erred in allowing prejudicial and irrelevant testimony regarding the defendant's participation in a gang when he was not indicted for any gang related charges or specifications.

{¶16} Appellant claims the trial court erred by allowing the state to present evidence that he was a member of the Heartless Felons gang. He argues that there was no gang specification included in the indictment and there was no evidence of the crimes being in furtherance of gang-related activity. He maintains the introduction of the evidence was irrelevant and highly prejudicial to his right to a fair trial.

{¶17} The record reflects that during the direct examination of Turner, Turner was asked what "HF" is, and he responded that it is known as "Heartless Felons." Turner denied knowing any Heartless Felons and denied any affiliation to the gang. No further questions were asked. During cross-examination, the state and defense counsel agreed to play a video of an interview of Turner by a detective in the case. Defense counsel questioned Turner about a reference to the Heartless Felons and insinuated that the detective, rather than Turner, brought it up. Turner testified that it was actually his sister who blurted it out. During redirect, Turner was asked about his knowledge of Dancy or Simmons being Heartless Felons, but he denied knowing and denied any affiliation with the gang. During the questioning of Dancy, he also was asked questions concerning the Heartless Felons and Simmons's affiliation to the gang. Dancy

testified that Simmons is a member and identified a tattoo on Simmons's arm that indicated an affiliation with the Heartless Felons. Objections were then noted on the record.

{¶18} Our review of the record reflects defense counsel agreed to play the video that contained the reference to the Heartless Felons and also elicited testimony concerning Simmons's affiliation to the gang. As aptly noted by the trial court, evidence of Simmons's association with the Heartless Felons was brought up numerous times without any objection, and it was not until the state sought to admit additional photographic evidence of Simmons's Heartless Felons tattoo that appellant raised an objection.

{¶19} "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904. Moreover, insofar as no objection was raised to much of this testimony, we review for plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *Issa* at 56, citing *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶20} Here, there was no testimony presented linking the crimes to gang activity and the questioning concerning any affiliation of Simmons to the gang was relatively brief. Simmons's culpability in the crimes was supported by substantial other evidence in the case. Upon considering the voluminous record in this matter, we find that even if the trial court erred in admitting the testimony and evidence relating to Simmons's affiliation with the Heartless Felons, he was not materially prejudiced. Moreover, even if the offending evidence had been excluded,

the outcome of the trial would not have changed because there was substantial evidence remaining that established Simmons's guilt beyond a reasonable doubt. The first assignment of error is overruled.

{¶21} Appellant's second assignment of error claims as follows:

II. The trial court erred in allowing cell phone records evidence to be presented by the state without proper authentication.

{¶22} Appellant argues that although there was a pretrial stipulation to the authenticity of the phone records that would be produced at trial, there was no stipulation that the cell phone records were business records kept in the ordinary course of business and no foundation was made for authenticating the records as business records at trial. Appellant further states there was no stipulation or authentication with regard to one specific phone number.

{¶23} The record reflects that prior to trial, a discussion was had as to stipulating to the authenticity of certain records. The state listed the anticipated records, and counsel for Simmons stipulated "to the authenticity of these Sprint, Verizon, T-Mobile, and the 9-1-1 tapes[.]"

{¶24} The state argues that it was not required to introduce an additional witness to testify that the cell phone records were, in fact, business records. In *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, the Supreme Court of Ohio recognized that "cell-phone records are generally business records" and found that had the records in that case been authenticated as business records, the court could be sure the records were nontestimonial in nature and thus would not violate the Confrontation Clause. *Id*. at ¶ 39-42.

{¶25} Here, there was a stipulation to the authenticity of the cell phone records, which are generally regarded as business records. Defense counsel did not explicitly limit the authentication stipulation with regard to Evid.R. 901 or Evid.R. 803(6). "[W]hen a party desires

to make an authenticity stipulation solely for Evid.R. 901 purposes and not for Evid.R. 803(6) purposes, the party must explicitly bring to the court's attention the limited nature of the stipulation." *Lambert v. Goodyear Tire & Rubber Co.*, 79 Ohio App.3d 15, 27, 606 N.E.2d 983 (4th Dist.1992); *Edge v. Fairview Hosp.*, 8th Dist. Cuyahoga No. 95215, 2011-Ohio-2148, ¶ 15, citing *Lambert*. Accordingly, the stipulation to the authenticity of the phone records eliminated the foundational requirements for business records. *See State v. Smith*, 136 Ohio App.3d 343, 347, 736 N.E.2d 560 (8th Dist.2000); *see also Edge* at ¶ 15-16; *Ruth v. Moncrief*, 2d Dist. Montgomery No. 18479, 2001-Ohio-1709, 2001 Ohio App. LEXIS 4886, 6.

{¶26} Furthermore, because no objection was raised during trial as to the authenticity of the phone records, appellant waived all but plain error. "Plain error exists only if 'but for the error, the outcome of the trial clearly would have been otherwise,' and is applied 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Although appellant argues that one particular number was never authenticated, upon the record before us, we are unable to find plain error occurred.

{¶27} Appellant's third assignment of error claims as follows:

III. The trial court erred to the prejudice of the defendant by allowing multiple instances of inadmissible hearsay.

{¶28} Appellant claims that there were several instances of hearsay that impinged upon his right to a fair trial. He points to the testimony of Dancy who claimed he heard from his cousin that the victim had sex with Johnson while Simmons was in prison. Although defense counsel did not immediately object, an objection was made and sustained following the line of

questioning. Assuming a timely objection was made, any error in regard to this testimony was harmless given the substantial evidence in the record of Simmons's involvement in the murder.

{¶29} Appellant also points to the testimony of Detective Diaz, who testified to information provided by an anonymous caller, who turned out to be Turner's sister. No objection was raised to this testimony, and any error amounts to plain error for which no manifest miscarriage of justice occurred.

{¶30} Appellant further argues that text messages from Simmons's phone were admitted as hearsay. Detective Diaz read into the record several text messages recovered from Simmons's phone. Some of those text messages were between Simmons and Johnson. However, Detective Diaz also read a few text messages from unknown individuals that appellant argues amounted to hearsay. Appellant points to no objection on the record and fails to state how any of those messages prejudiced him. Even if this evidence was inadmissible hearsay, we cannot say, in light of the substantial admissible evidence of guilt, that the result of the trial would have been different absent its admission. Appellant's third assignment of error is overruled.

{¶31} Appellant's fourth assignment of error claims as follows:

IV. The defendant was prejudiced by improper comments from Detective Diaz vouching for the credibility of witness Eric Turner.

{¶32} Appellant challenges testimony provided by Detective Diaz about believing the information provided by Turner during the investigation. Opinion testimony of a witness regarding another witness's credibility infringes upon the role of the fact finder and is subject to a harmless error analysis on review. *State v. Alexander*, 8th Dist. Cuyahoga No. 104281, 2017-Ohio-1445, ¶ 50-51; *State v. Smith*, 10th Dist. Franklin No. 16AP-21, 2017-Ohio-9283, ¶

46. Crim.R. 52(A) defines harmless error and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

{¶33} The record reflects that defense counsel was questioning Detective Diaz about why Turner was not investigated in the case. The following testimony occurred at trial:

Q. Then how come Mr. Turner isn't part of the conspiracy?

A. Mr. Turner, number one, I didn't have to seek him out. I didn't have to look for him. I didn't have to call him. He came to me. He came forward. He came forward with the information. He provided it to us, everything that occurred.

* * *

A. We had never at any time ever had any reason to believe that he was involved in the actual homicide. We one hundred percent believed he was telling us the truth.

That they came back to his house, after the homicide and did what they

did. There is nothing in our investigation that led us down any other path.

{¶34} Appellant contends that the officer's testimony vouching for the credibility of Turner deprived him of his right to a fair trial. We do not agree. Defense counsel was asking questions to discredit the investigation. After Detective Diaz conceded that the police did not go to the apartment to investigate, defense counsel asked:

Q. Because after anonymously telling you on the phone it's Anthony Simmons, [Turner] came in, and said Tone [a.k.a. Anthony Simmons] came to my house, and you believed him.

A. Timothy Dancy and Tone [a.k.a. Anthony Simmons] came to his house, yes,

and I believed him.

{¶35} It is apparent from the questioning that Detective Diaz was defending his investigation of the case and rebutting the implied charge that Turner was involved in the

homicide.    Defense counsel aptly cross-examined Turner about deficiencies in the investigation.  Upon viewing the entire record, we find that any error was harmless because it did not affect a substantial right.

{¶36} Appellant's fifth assignment of error claims as follows:

V.   The trial court erred to the prejudice of the defendant when it dismissed a

juror during deliberations and replaced the juror with an alternate juror.

{¶37} Appellant challenges the trial court's dismissal of a juror in the case who was reported by another juror to have expressed concern about the way she would decide the case because of a fear of the Heartless Felons.   The record reflects that the trial court conducted a voir dire of the juror who reported the matter, as well as the juror identified as the juror who had expressed concern and another juror who overheard part of the conversation between the other two jurors.   Although the subject juror denied being in fear, the trial court made the decision to dismiss the juror for cause over defense counsel's objection, and the court replaced the juror with an alternate juror.

{¶38} Under R.C. 2945.29, a trial court is allowed to discharge a juror and replace the juror with an alternate upon determining the juror is unable to perform his or her duty.   Pursuant to Crim.R. 24(G)4), "[i]f an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew."

{¶39} Here, the record reflects that concern was raised that a juror's objective participation may have been compromised in the matter.   After examining the involved jurors, the trial court decided to discharge the subject juror because the court questioned the juror's ability to be impartial.   The record reflects that at that time, the jury had been in the process of trying to select a foreman.   We find no abuse of discretion in the trial court's decision to

discharge the juror. Further, we presume regularity in the proceedings, and no prejudice has been shown. Appellant's fifth assignment of error is overruled.

{¶40} Appellant's sixth assignment of error claims as follows:

VI. The defendant's convictions were against the manifest weight of the evidence.

{¶41} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*.

{¶42} In arguing that his conviction is against the manifest weight of the evidence, appellant points to the inconsistencies between Dancy's two statements to police and the proffer statement given when he agreed to testify. However, upon our review, we must review the entire record in the case.

{¶43} Our review reflects that despite the inconsistencies with his statements to police, Dancy provided detailed testimony of the crimes that occurred. Other witnesses testified to hearing gunshots and a white Kia leaving the scene with two assailants. Cell phone records placed Simmons in the area of the shooting. Turner testified that the night of the homicide, Simmons and Dancy arrived at Turner's sister's apartment with guns and bloody money. Surveillance video from Walmart showed Dancy and Simmons purchasing ammunition the day

after the homicide, and they were purchasing the exact same caliber of bullets as the shell casing found at the scene of the homicide. Following the murder, Simmons exchanged a number of text messages with Johnson in which they discuss the house being "hot," Johnson hiding appellant's gun, and Simmons getting a new cell phone. The day he was arrested, appellant texted Johnson, "they got me." Simmons also was in frequent contact with Dancy's mother after Dancy was arrested, and he was asking questions about Dancy's case and the keys to Simmons's car, which Simmons had reported stolen.

{¶44} Although there were some inconsistencies in the record, upon examining the record as a whole, it cannot be said that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's sixth assignment of error is overruled.

{¶45} Appellant's seventh assignment of error claims as follows:

VII. The trial court erred by sentencing the defendant to pay court costs.

{¶46} The record reflects that the trial court ordered appellant to pay court costs in the sentencing entry, but did not impose court costs at the sentencing hearing. The Supreme Court of Ohio has indicated that in such a situation, a remand is not necessary in order for a defendant to file a motion to waive costs since a trial court retains jurisdiction to waive, suspend, or modify the payment of costs after sentencing pursuant to R.C. 2947.23(C). *State v. Beasley*, Slip Opinion No. 2018-Ohio-493, ¶ 265. Because appellant may seek a waiver of costs with the trial court, his request for a remand is without merit and his seventh assignment of error is overruled.

{¶47} Appellant's eighth assignment of error claims as follows:

VIII. The defendant was deprived his right to a fair trial by the cumulative effect

of all errors, even if any one of those error may be ruled harmless.

**{¶48}** "Under the doctrine of cumulative error, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *State v. Myers*, Slip Opinion No. 2018-Ohio-1903, ¶ 203, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223. As was the case in *Myers*, because appellant offers no further analysis for his claim of cumulative error, the proposition lacks substance and is overruled. *Id*. at ¶ 203, citing *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 103; and *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 197. Appellant's eighth assignment of error is overruled.

**{¶49}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR
KEY WORDS:
Appeal No. 106179 -   State of Ohio v. Anthony Simmons